Good morning. May it please the Court, my name is Frank Leone. I represent the appellant in this case, Roberto Castro-Lopez, and the issue in this case I think is fairly narrow. It is whether or not it was plain error for the district court in this instance to determine that Mr. Castro-Lopez had a criminal history category of two based on two juvenile adjudications from Arizona where there is no right to a jury trial. There's two cases which are cited in the briefs which we contend establish that juvenile adjudications where there is no right to a jury trial or jury review or de novo review cannot be counted towards determining criminal history category. Well, that's not what they say. They say that they can't – they need to be proven to – the existence of the conviction has to be proven to a jury. Is that what they say? I'm sorry, Judge. They don't say that the juvenile convictions cannot be used. They say that they are subject to apprentice and therefore need to be – the fact of the conviction has to be proven to a jury. Correct, Your Honor. That's quite different. Well, it's not – It doesn't mean they're washed. They're not out of existence. Well, I would – I would submit, Your Honor, that the Washington case, which is the one that was – it takes it a little bit further than that, not just that the conviction has to be proved to a jury, but it can't be counted either for calculating criminal history. And that's what the basic problem here is, that because of the criminal history calculation that was done and the fact that anything over the criminal history category of one disqualifies Mr. Castro-Lopez for safety, though, for his freedom. Now – Well, first of all, we have a prior opinion on this issue, don't we? Yes. What about it? I'm sorry. I have a little – We have a prior opinion on this issue, do we not? On this particular issue, the Labrador – Yes. Whether or not for the safety valve there has to be – you can use the juvenile – or you need to – whether a predi applies to the – to the safety valve. I believe that the – that the Washington opinion is the opinion that controls in this instance. In that case, you – you had – What about the Labrador-Bustamante opinion? I think that's a little bit different, because, yes, it does say, for example, that the court is – the district court can determine qualification or whether the standards are met for a safety valve. But one of the elements is whether or not the defendant has a criminal history category of 1 or not. And in order to reach that, the judge has to make some determination as to whether or not he has convictions that qualify him beyond criminal history category 1. So necessarily, he's going to have to look at these convictions in order to determine whether or not they can count. If you're looking at adjudication – I don't understand what you're saying about Labrador-Bustamante. I'm sorry, Judge. I have no idea. I don't understand what you're saying about Labrador-Bustamante, why it's not controlling here. Well, because – because it would be if the – if – because there are – there's at least five elements in the safety valve. One of them, as I say, has to do with criminal history category. The rest of them have to do with determinations that the judge can make based on his observation of the case, the pre-sentence report. Why are they different with regard to the apprenti question? They're different because in order to determine whether or not there's a prior – he's a criminal history category more than 1, the judge has to look at those convictions and decide whether or not they can be countable. And in order to decide whether he's cooperated, the judge has to look at the facts about whether he's cooperated. But in this instance, it appears – So why isn't it an all – all or nothing? There are five requirements, and either they have to go to a jury or they don't. Because in this instance, the only reason the judge decided not to – that this he was a criminal history category 2, not a 1. That controlled pretty much the – and even though there's some discussion about wanting to – to qualify him for other safety valve considerations, the judge says it doesn't matter what I do, that criminal history category 2 is what disqualifies him outright. And so that is, it seems to me, the – the reason why those convictions have to be countable and they don't qualify under apprenticeship or under Washington, which this Court decided in 2006, that in that case, you had juvenile adjudications that were being considered to – to change a criminal history category from, I think it was a 1 to a 5. But the – our problem here is an apprenti problem. Is that not true? Your problem with these convictions is an apprenti problem. It is an apprenti problem. Is it an apprenti problem? Yes. Okay. So I need you to tell me why – I mean, if it's an apprenti problem, apprenti and Elaine in all of those cases essentially say that there's an apprenti problem if you're trying to increase the maximum sentence. Here, you're not trying to do that. You're trying to decrease it, right?  So why isn't that the reason why apprenti doesn't apply? Because of the effect that it has on the calculation of the criminal history. The criminal history – and this Court said in Teige, the reason criminal – prior criminal convictions are countable is because a jury has made the determination on those prior convictions. Either that or the defendant has pleaded guilty. In this instance, you don't have that. Prior juvenile adjudications in Arizona are not decided by a jury. They're decided by a judge. And so in Teige, that's exactly what this Court said. You can count those prior convictions because they have been decided by a jury. In this instance, in order to even reach the calculation for criminal history, you have to look at whether or not the person has more than one conviction and if that conviction takes him out of criminal history category 1. In this instance, you don't have a defendant who makes an admission with regard to that prior conviction. It certainly wasn't determined by a jury, because in Arizona that's not the case. In a lot of other jurisdictions – To be honest, you're not discussing anything relevant here, which makes it very difficult to have this argument. The relevant question is, does apprenti apply to the safety valve in general? And you're not willing to discuss that. Well, Your Honor, I think it does for the reason that at least one of the elements of the safety valve requires a determination of whether or not there's prior convictions. If the prior convictions meet the standard and the reason why it makes a difference in apprendi, it should also do so in this instance. And in those, at least with regard to apprendi, the prior conviction is the one exception to facts that the judge can consider in order to determine the sentence. In this instance, yes, it doesn't increase the maximum possible penalty, but it disqualifies the defendant from – And there are four other things that would disqualify him as well in the list, right? He has to have not used violence or credible threats of violence. What about that one? Is that one subject to apprendi or not? No. No, I don't think so, because as I say, in Labrador, it talks about the judge being able to make those determinations based on what he sees, and that's far beyond and much more detailed than what the jury sees. But the prior convictions, which is the first element of the safety valve – You'd think that would be the least likely to be subject to apprendi, because Alamandara's tory says, in general, priors are not subject to apprendi. So of the five things in this list, you would think, but for Teague, that would be the least likely to be subject to apprendi. But the reason you calculate criminal history is based on prior convictions. It's not based on facts that are not presented, for example, in this case, as part of the basic elements of the offense. Let me see if I understand your arguments. And you basically have two arguments. One is that the sentencing guidelines were incorrectly found, correct? And because the judge coming to Category 2 relied upon juvenile convictions, for which, at that time, the defendant did not have the right to counsel. Is that your first argument? Not the right to counsel. The right to jury trial. The right to a jury trial. I'm sorry. Yes. And this is a plain error case. Yes. Right. Because this was never raised in front of the – that's your first argument. Yes. Your second argument, as I understand it, then, is even if it is counted, it wasn't found beyond a reasonable doubt by the sentencing judge. No. It's not your argument. No, that's not my argument. Okay. Because I think the judge can look and see whether or not the defendant has prior convictions, and typically they're not contested. And in this instance, for whatever reason, counsel did not object to the use of prior adjudications, even though there was case law that indicated – and I refer here to Teich and Washington from this circuit – that says that those cannot be – juvenile to prove prior convictions in order to increase the maximum possible penalty, but also under Washington, where you increase the criminal history category in order to increase the sentence. And in this instance, that's exactly what happened, is you have these prior adjudications that are – that are – don't fit within that exception, if you will, to apprendi, because they're not prior convictions determined by a jury. Okay. Thank you very much. Okay. Thank you, Mr. Chapman. May it please the Court. I'm Bob Miskell from the U.S. Attorney's Office in Tucson, on behalf of the United States. In this case – and this case has to be reviewed under plain-error standard – the mandatory minimum sentence and the statutory maximum sentence the defendant faced was established – excuse me – established by the facts he admitted to the change of plea. The Court failing to reduce the sentence based on judicially found facts does not implicate apprendi at all. Well, it would if this was increasing the sentence. If it wasn't, yeah, I'm saying it's decreasing. The failure to decrease, though, does not imply that. So isn't that kind of in the eyes of the beholder, i.e., it's increasing it from what it would be if he didn't have the conviction, because he would otherwise be eligible for the safety valve. That's one way to look at it. Another way to look at it is that it's decreasing it from what he would – what would otherwise be the mandatory minimum. So it's sort of how you look at it. I would say if you look at the apprendi line of cases, what they're concerned about, it's a Sixth Amendment case right to a jury case. And they want – the Supreme Court has made it absolutely clear the defendant's maximum or minimum or anything that increases the sentence has to be found by the jury. That's what the apprendi line of cases hold. They're Sixth Amendment cases. In this case – and they've explained that to or admitted at the change of plea, obviously. In this case, what set his sentence was what he admitted to at the change of plea. The fact that it wasn't reduced does not implicate apprendi. And I don't think it is a two-sided coin, because he's only being sentenced based on facts that he admitted at the change of plea. And particularly in light of this Court's opinion in Labrada-Mustamante – I mean, but Alain sort of stepped back and took a more whole district view of what apprendi was about, right? I mean, the government was making a somewhat similar argument in Alain, that is, this wasn't really increasing the maximum, although it was increasing the minimum. Right. And so it didn't count, and the Supreme Court said, no, wait a minute, it actually had a practical effect on what this guy's sentence was going to be. And that's – and, I mean, in a way, this is the hardest subsection of the safety of Al to deal with, because it's a prior. But if you take the other four subsets – subsections, which involve real facts and things that ordinarily would go to a jury, the impact of not sending it to a jury is that he could be sentenced to more than he would be otherwise, without a jury having decided that. And in Alain, what the Supreme Court said was they always talked about facts that increased the sentence or aggravated the sentence. They consistently used those two words, almost interchangeably, in Alain. They never talked about facts that would reduce the sentence. They said the government has to prove to a jury, well, have the defendant admitted a change of plea, anything that would increase the minimum sentence the defendant was subject to. And that happened in this case. He was subject to the minimum sentence because of the weight of cocaine that was admitted to at the change of plea. So it's consistent with the Supreme Court's reasoning and holding in the Alain case. And again, under plain error, there's just nothing that would suggest the district court committed plain error in this case by not explaining it. This statute is not discretionary. You're not arguing that it should be, right? Excuse me? The safety of Al provision is not discretionary. And you're not arguing that it should be in a Booker kind of way. I mean, previously, all of the guidelines were non-discretionary, but after Booker, they are. But this is still non-discretionary, right? In other words, if these facts are proven, the judge has to reduce the sentence or has to do a guideline sentence. Kennedy. Well, her point is that the statute commands the judge to reduce the sentence if the safety veil factors are found by the judge. It certainly gives the judge the ability to do that, yes. And if he has to do it. But it's a command. He has to do it. He doesn't have a choice if you find those factors. I'm actually not sure on that. 355-3F. But anyway, you don't have to argue about it there. Well, yes. It says the court shall impose a sentence pursuant to the guidelines if the court finds it sentencing 12345. Okay. I will bring it to that hearing. I'm sorry. Okay. I was – where I was going with it is that it's therefore – I mean, if not similar to the fix that the Supreme Court imposed on the guidelines in general in Booker, unless we were to impose something similar here. I mean, that would be a possibility to – if we thought there was a problem, to avoid the problem would be to do a similar fix on this. But that would be sort of unfortunate. In other words, all of the guidelines were originally mandatory, and the Supreme Court, to eliminate an apprentice problem, essentially, judicially rewrote them. Right. Right. No one has suggested we should do that here, but it theoretically would be a possibility if we thought there was an apprentice problem. Yes. If there was an apprentice problem, that would be a possibility. But, again, the government's position is, especially in a plain error review, you can't say this judge committed a plain error in light of the existing law in this circuit or with the Supreme Court, for that matter. I mean, it may be something that the Supreme Court or this Court does later on down the line, but I don't see how it can be reached in this case under the plain error standard. And, I mean, admittedly, Judge Burry recognized that he didn't have discretion because of the way the statute was worded and because of the way the guideline and the statute were worded. And what both lawyers said to him. But, anyway. Right. Exactly. So unless the Court has any further questions. Thank you very much. Thank you. Thank you very much. The case of United States v. Castro Lopez is submitted.
judges: Quist, Fisher, Berzon